2017-1096. Mr. Mostyn. Thank you, Your Honor. May it please the Court. I would like to begin our remarks here today and address where we believe the District Court got it wrong and hopefully explain why this appeal was filed at all. The District Court very clearly in page 7 of its order stated that direct infringement requires knowledge of infringement and that is just an inaccurate account of the law. On the indirect infringement, the Court failed to understand that Trim-Lok had knowledge of the patents, and I don't mean just knowledge that the patents existed. I mean knowledge of the scope of coverage of the patents, and we allege that clearly in the second amended complaint. And thirdly, on the contributory infringement, the District Court imparted a scienter or intent to infringe requirement that just is not in contributory infringement. We believe it applied the same standard to induced infringement as it applied to contributory infringement. All right, so let's start with the direct infringement. I mean, if you would agree, would you not, that there can't be direct infringement by someone who's only providing a component part unless they were I absolutely agree with that, Your Honor. In this case, I don't believe there was ever any dispute that this is a combination claim and a recreational vehicle or RV is required to make it. We do allege at paragraph 15 of the second amended complaint that their employees went in there. We re-allege that again at paragraph 33, and then we re-elaborate why after paragraph 33. Okay, so your direct infringement claim is limited to the argument that the RV manufacturers in infringing activity. We believe that they did in fact install in some instance and assist and instruct how to use this during the course of their sales activities. Okay, so you're not saying that there's any other argument for direct infringement? No, Your Honor. Okay, now on the indirect infringement claims, I mean, you're correct that there doesn't have to be actual knowledge of the infringement, but there has to at least be the standard under Global Tech, which says that there has to be some greater level of scienter than simply knowledge of the patent. And Your Honor, I would address that and say that that knowledge has to be somewhat related to the knowledge of the scope of the claims. We would allege, and did so in paragraph 17, 18 of the second amended complaint, that two long-term employees that used to work for the plaintiff appellant were then taken and hired at Trimlock. I would even go so far to say before this court, we don't even allege these employees knew the scope of the coverage of the patent. It was their job to know. They were involved directly with the named inventor on the patent. They shared an office. Can you speak up a little bit? Oh, I'm sorry. They worked directly with the named inventor of the patent. They shared an office with them. They specifically designed these products, which is why we believe Trimlock hired them in the first place. And they extolled the virtues when they worked a lifetime of why the patent features of these products were a superior ceiling solution. So we absolutely believe with certainty they knew the scope of coverage of the patents. You're saying there was at least enough for a trial? Yes, Your Honor. At some level, I will admit I had difficulty following the district court's reasoning, and it seemed at some places it was more akin to a summary judgment motion standard that we were made these seals until the ex-employees went over there and they started producing them. Is that right? That is correct in the timing, Your Honor. It was within a month of their arrival, and we believe no coincidence that these seals, as we showed in the colored pictures submitted to the lower court, that bear almost identical features to the patented products, those came about shortly after their arrival. And you argue in your complaint or allege in your complaint that they have no use other than to be part of sealing a slide-out room? That is correct, Your Honor. These are uniquely suited features that would essentially make them more expensive, useless, and cumbersome to, say, seal a automobile trunk deck lid. And I do not believe the court will find anywhere in the record, here or the court below. Well, you've alleged it. All you have to do is allege it, right? You know, this is complaint stage. I understand, Your Honor. I hear you. You're arguing to me why it's not true also, but then that's fine, but you don't even have to do that to succeed. I apologize for that, and the reason I do it is because I believe, again, the lower court subject this almost to a summary judgment motion standard, so understood. The reason, if we may go back to the direct infringement, that we believe the court decided this on a requirement of knowledge that just is not there, is they say very straightforwardly on page 7 in the indirect infringement section, to state a plausible claim for direct infringement and survived dismissal, LTI must allege facts which, if true, would show that Trimlock knew about the 590 patent in June 2013 and knew it was infringing. I don't see that in 271A or any of the other case law, Your Honors, and that is why we believe that part of this opinion is clear error. And on the induced infringement, let me go back a moment to the direct infringement. One of the things I did not see in Trimlock's brief is any distinction between the case we cited, which is Stuckenborg. I think the lower court mistook that a patent infringer has to manufacture every piece component. It seems to be a thread in here, that's just not true. The Stuckenborg case, I don't believe any of the underlying parts were patented. However, the government, which was the alleged infringer in that case, was held liable because they took this bundle of unpatented parts and combined them to make the patented parts. In this case, we have Trimlock taking RV, which we again acknowledge they didn't make, combining it with their part, with their employees, to make the patented combination, and that is the direct infringement. And if the court has no further questions, I'd like to reserve my time for the rebuttal. We will save it all for you, Mr. Marston. Thank you, Your Honor. Judge Moore, Judge Lurie, Judge O'Malley, what a pleasure. The district court's decision should be affirmed on appeal, and I think the court found that this was not a plausible claim. And I think the court looked at what the patent was, and I won't read the claim, but it's very clear from not only the patent claims, but also the file history, that this seal is not patentable at all. And in fact, the claims directed to the seal alone were canceled. And so really what you have is a patent about a mobile living quarters having a slide-out room defining an interior space. And we see from time to time there are claims like this that come out. And it is incredibly difficult to infringe a claim like this because you have to sell an RV that has a room that slides out with this seal. Clearly there was direct infringement by the customers. If there was infringement at all, and we have various reasons why, but it's not before the court as to why there's no infringement whatsoever, but if hypothetically there was, if this component was put in an RV, and if hypothetically it was put on by Forest River RV. It doesn't matter who it's put on by for purposes of direct infringement. Direct infringement is, you know, there's, it is a strict liability claim. If you use those seals with the RV for the slide-out, that's direct infringement by the customer, right? I agree, Judge O'Malley. Okay, so the court focused on the absence of direct infringement by the named defendant, but weren't there allegations in the complaint that the named defendant's employees went over and actually helped with the installation and therefore were involved in the two-stage process? I think the court found that that was not plausible. And it was not plausible because in the first minute complaint, in their paragraph 30, they first said that this inventor guy was able to obtain a two-part seal, this is Appendix 041, their paragraph 30, that there was a two-part seal that this inventor was told about and that somehow it was being sold. And then what happens, that was basically, the first order basically said there wasn't enough there because there is no indication that our client, Trimlock, had done anything there. So then they filed a second amended complaint. Aren't allegations sufficient, as Judge Moe pointed out, for there to be a trial? But the allegations here are not sufficient because they're not plausible. And what Iqbal said... Let's put aside whether or not when this case first started, since the judge took three years to go through this, but that Form 18 was still controlling, we'll give you that we're talking about Twombly and Iqbal because I don't think that it matters in this case. But even under Twombly and Iqbal, we have said repeatedly that the obligation to draw all reasonable inferences in favor of the party filing the complaint remains in full force and that Twombly and Iqbal doesn't change that. The Supreme Court has said that. So we have to draw all favorable inferences. He says there were two employees that left one company, goes over to the other. All of a sudden, the second company is making a seal that it never made before, and they went over and helped teach these RV people how to install it. How is that enough for purposes of inferring direct infringement? A couple of things, Judge O'Malley. The point that you are making was not in the pleading. In other words, that these employees went over to Forest River. That's nowhere in the pleading. It is in the pleading. It says in or around June 2013, defendants' employees assisted with the installation, directed the installation, or directly installed the Hughes products on an RV at Forest River for use with the slide-out room. That seems very specific. Granted, they're not mentioning which employees they are, but they have, you know, a date. They say the defendants' employees went and did this. I mean, you know, maybe you'll disprove this fact as the case moves forward, but I have to assume for purposes of this stage of the pleading that that's true and correct. Well, Judge Moore. That's it. You're done. I don't see how you get around it. Here's how I would like to address it with you, Judge Moore, is that employees are representatives or agents. They don't really say who. They're very vague. They don't say and or agents. It's almost as if they were trying to cleverly plead this without getting any into specifics as to who or what they did. In fact, but if any of them are true, then you've directly infringed. If you send an agent and instruct him to do this, he has done it at your behest and under our law, that would amount to you having caused him to do it and making a direct infringement. But the words that it's your agent, someone you hired by contract to go do it, his representative, his employees. But if you look at the further language, Judge Moore, it says assisted with the installation, directed the installation. Yeah, but if two of my clients build a tower out of Legos and that tower directly infringes something, they're both participating in the direct infringement. But if you look at what the claims call for, if they were, let's say they're there and they say, over there and they point, I don't think that rises to the level of direct infringement, especially what we're talking about here, a non-patentable seal and an RV situation. We don't really know. If you look at the method claim, it's in the patent is you have various steps that you'd have to do. And the question is, did they do all these steps or not? They're very vague about this. In fact, it's so vague that Judge Miller said that applying his situation of his judicial experience and his common sense, look, I don't see it here. I think you've got a very narrow patent that requires an RV. And I think this court has seen many contributory and inducing cases. And then in paragraph 16, he identifies a specific person, Ed Kizanopouloski, who went to the Forest River location and saw the product installed on an RV right there. And that's an excellent point, Judge Miller, because it says in that last sentence, the accused product was mounted adjacent to the opening for the slide out of the Forest River. He says, I went there, and lo and behold, it was installed. But it doesn't say who did it or what do these people, these employees or representative agents, what role did they play and what did they do? Did they follow all these steps? So here's the problem. It's almost as if you're asking at the pleading stage for the following rule of law. My three children go into a room, all right? In that room, somebody eats all the cookies out of the cookie jar. Three kids come back out. I can't accuse any of them because I don't know which one ate the cookies. It's almost like that's what you're saying. Somebody built this RV on this date. This guy saw it there. It absolutely infringes according to the complaint. Whether true or not, that's the complaint. Somebody went into a room, these people allege your employees were in that room participating in that process of building that Lego tower or eating those cookies. The fact that it happened in a room behind a closed door and they're not positive exactly what aspects your employee did or didn't do seems perfectly reasonable, right? If you're going to sell them seals, it seems perfectly reasonable to think you would go out and demonstrate to them how to put them on the vehicle for purposes of using them and selling them. It's a perfectly reasonable assumption. Why isn't this enough? Because Iqbal gave the district court judge the ability to say what, the who, what, where, and when. Judge Miller said there was not... No, this is not a fraud pleading standard. Trombley and Iqbal is not that strict. Trombley and Iqbal doesn't require a probability requirement. It doesn't even require that you say who all the individuals were. It simply requires that with all reasonable inferences drawn in favor of the complainant, that it's plausible that infringement occurred. I mean, they have a lot of allegations in these complaints. And yes, the judge kept making them go back and do it over and do it over. And so, I mean, I don't even understand your argument. Well, that didn't show up in the first complaint, so the fact that it came later must mean that it wasn't plausible. I mean, that doesn't... I don't buy that, because why do you give someone an opportunity to re-plead? Well, it's a different story, is my point. The first story is different and not consistent. Well, we've got... Now, look at paragraph 42 of the Second Amendment complaint. Yes. Defendant influenced Forest River to include the accused product as a component of their RVs, knowing that such combination will fulfill all elements of at least one claim of the 590 patent. Further, defendants possess specific intent to encourage another's infringement by encouraging the use of the accused product on RVs with slide-out rooms. How's that not enough? Well, because of the fact that influenced Forest River. I mean, what exactly is that? And this is... We're talking about a case here... The allegation is that these were never made before, and then all of a sudden they're being made and they're being sold to someone for this precise purpose, and that they are inducing them to use these seals instead of some other seals for this precise purpose, and that they have knowledge of the patent. I don't understand how that can't be enough. Well, because this is such an isolated circumstance, what we're talking about is the manufacturing of seals, and so the court could send this back to the district court to have a discovery as to when this event occurred. But really what we're talking about here in this case is a competitor selling these seals, and usually in these types of cases, you would find all kinds of brochures, materials, instructions, very specific things that would be inducing or contributing. That's not here. You don't need that in your complaint. Yes, you might be able to convince the judge at summary judgment that there's not enough to prove the intent, but it's certainly alleged. Do you dispute that there's no non-infringing use? Yes, I do. All right, but you don't dispute that they allege no non-infringing use. I dispute the fact that you could sell something and have the intent and knowledge and appreciation that it has a non-infringing use. For example, if you wanted to repair an RV that originally had one of their seals, you could probably do that because of the fact there's been an exhaustion. All right, but there's no way to use, there's no purpose for these seals other than using them in an RV like this, either for original or repair, and frankly, repair could constitute infringement. I don't think that that's clear that there's no other use of those seals. It's clear. It says on paragraph 57, this product has no use apart from the sealing a slide-out room. Okay. All components of the accused products are not staple articles of commerce suitable for non-infringing use, at least because the components have no use apart from sealing a slide-out room. Seems like it's flat. My argument, again, would be that if you look at the actual pleading, the fact that if you look at the actual pleading, that the vagueness and the qualification of the fact that its employees are represented for agents without being saying what they did, it's the installation, direct installation, or directly installed the accused product, that they did not go far enough to make out the direct infringement case for something that is a product that is non-infringing. In the particular case where there is a patent that is specifically requiring an RV that has a slide-out door, and again, if the court wants to send this back down to district court to determine what happened at that river RV place, that's probably what's going to happen if the court wants to do that, but I will tell you that this is a case where our client is accused of selling these unpatentable seals, and there's absolutely nothing in the record to suggest that... But the patent isn't to a seal. You mentioned before it was a method claim. You don't know who did what, but it's not. They have method claims. They also have composition claims, the RV plus the slide-out room plus the seal, and they have an allegation that this Forest River installation is selling that exact product, so even if your client ends up not to be a direct infringer, it seems like at least as pled, they still clearly have a case of contributory and induced infringement. But the fact that there is no specific facts that they have recited which go to this inducing or contributing, other than the fact that they found a seal installed at Forest River RV, and they assert that one of the three people could have installed it, a representative, an agent, or an employee, but they're very specific. They don't say and or. But it doesn't matter if they help for inducement if you are selling a non-staple article of commerce that has no non-infringing uses, which is what they've alleged. My point is that there is a non-infringing use. They've pled that there's not. But your non-infringing use was repair. Repair. But that could be an infringing use too. I don't even understand that. If it were under the Arrow case, if it was to repair an RV that had a seal, one of their seals, and you're going to sell the seal to replace it, then there's been an exhaustion of that sale, so that can be done. But more importantly, under inducing and contributing infringement, if our client had an opinion of counsel and believed that their design was not infringing, then they'd be able to sell it because there's not the requisite intent on the inducing and contributing. The direct infringement, I admit that that would be a problem. Are you of the view that having an opinion automatically insulates you from being able to establish from them from being able to establish intent to infringe? I believe that that would represent a problem if there was a good faith belief grounded in this non-patentable article into commerce. That's way beyond pleading. Yeah, but we were asking about the possibilities of non-infringing uses, and those are the only ones I could think of as they stand in the yard. Okay. Thank you, counsel. Mr. Mostyn has a little rebuttal time. Thank you. Quite a bit if you need it. Pardon? Quite a bit if you need it. Thank you, Your Honor. Let me address first some of the things that were granularly discussed at the very detailed level, and it may be outside the pleadings. Trimlock said there was no brochure. We believe they didn't have time to make a brochure. This is a relatively new product, shortly after they got the former LTI employees. So the fact that we can't produce a brochure, that would be something later to come through discovery. I don't think we should be talking outside the pleadings. I'm sorry. I know I asked some questions that went outside the pleadings, but your appeal has to stick to the pleadings. I will remain to that. Let me address the DSU med case, and then I would also, after that, like to address a little bit of Iqbal and Twombly and discuss why we're a lot different than those. Just to shortly say, the DSU med case states that the circumstantial evidence can be used to prove intent. It's hard to get into somebody's head, but one of the pieces of circumstantial evidence is instructing and infringing use. And we have stated in the second amended complaint that Trimlock employees went in there and instructed an infringing use. That is the intent. Additionally, we cite that they tried to actively conceal the parts they put in there by hiding the scraps. This is the largest RV manufacturer in the country. They would have had to walk by trash receptacles on the shop floor. Yet they didn't. They purposely removed those parts. And we believe largely because they didn't want, as we allege in a second amended complaint, one of the LTI, lifetime employees, to come in there and discover what had happened. Let's go for a moment and talk to the plausibility of Iqbal and Twombly. I'm sure the court understands it. But if we go to Iqbal, what was implausible about that was the acts of the attorney general at the time. There is no vicarious liability in that case. In other words, Iqbal as a prisoner would have had to allege the attorney general himself had a direct hand in the abuse of him. That isn't even plausible on its face. I can't imagine any instance where the attorney general would be directly in the prison abusing the prisoners. If we go to the Twombly case, that case simply made allegations that all these telecom carriers are out there colluding. And there was no reason other than, well, your prices are a lot the same. Well, there are a lot of other explanations. And it was too tenuous. Common economic circumstance of the situation at hand, common costs, would reasonably explain that. They couldn't make a more concrete connection. The difference between those cases and this case is we absolutely make the concrete direct connections. These employees, shortly after their arrival on the market, appeared products as photographed in color. Look, nearly identical in many aspects to the patented products we sold before their arrival. And if there are no further questions, your honors, I would end it at that. Thank you, counsel. We'll take the case under review. All right. The audit report is adjourned until tomorrow morning at 10 a.m.